UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENYA BROWN, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:16cv1144(SRU) |
| | : | |
| SCOTT SEMPLE, ET AL., | : | |
|     Defendants. | : | |

**INITIAL REVIEW ORDER**

The plaintiff, Kenya Brown ("Brown"), is incarcerated at the Cheshire Correctional Institution in Cheshire, Connecticut ("Cheshire"). He has filed a civil rights complaint against Commissioner Scott Semple, Director of Mental Health Dr. Robert Trestman, Dr. Crabb, Dr. Gerald Gagne, Jr., Warden Santiago, Deputy Warden Robert Martin, Deputy Warden Jeffery Zegerzuski, Captain James Shabbanis, Correctional Officer Aponte, Health Services Administrator Ron Lanbontte and Administrative Remedy Coordinator Kimberly Daly. For the reasons set forth below, the complaint is dismissed in part.

On July 12, and July 15, 2016, the court held telephone conferences with Brown and Assistant Attorney General Madeline Melchionne regarding Brown's request for a temporary restraining order seeking mental health treatment. *See* Mem. Law Supp. Mot. TRO, Doc. No. 2; Conference Mem. & Order, Doc. No. 10.

During the telephone conferences, the parties agreed to an interim course of action with regard to Brown's mental health treatment involving twice weekly mental health care, the ability to request additional services if necessary and a complete evaluation of Brown by a physician from the Department of Correction at the end of August to determine Brown's proper mental

health classification and whether he should be transferred to a different prison facility based on that mental health classification.  *See id.*

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  *Id.*  This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*.  *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam).  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).   A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

2

Brown claims that since 1993, mental health professionals have prescribed medications to treat his various mental health conditions including, borderline personality disorder, anxiety, anti-social traits, suicidal ideation, self-mutilation, depression and post traumatic stress disorder. The Department of Correction has designated Brown with the "S" classification because he has attempted to mutilate himself and commit suicide in the past.  The Department of Correction has also created several profiles between Brown and other inmates because of past incidents between Brown and those inmates.  Those profiles prevent Brown from being housed at Garner or Osborn Correctional Institutions because the other inmates with whom he had prior conflicts are housed at those facilities and the facilities are not large enough to accommodate both Brown and the other inmates.

On May 19, 2016, Brown was incarcerated at Corrigan Correctional Institution ("Corrigan") and became involved in a heated debate with Officer Aponte.  Brown became agitated and tried to harm himself.  Correctional officials called a code and escorted Brown to the medical infirmary to be placed on suicide watch.

Officer Aponte left all of Brown's property in his cell after officials escorted him to the infirmary at Corrigan.  Brown asserts that some of his property was stolen by his cellmate before officials removed the remaining property from his cell and inventoried it.

At some point, after the plaintiff's placement in the medical infirmary, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis, Health Services Administrator Lanbontte, Dr. Gagne and Dr. Crabb concluded that the only possible course of action was to transfer Brown to Cheshire.  Dr. Crabb adjusted Brown's mental health score to

facilitate his transfer to Cheshire. On May 31, 2016, correctional officers transported Brown to Cheshire.

Brown claims that Cheshire does not have the appropriate mental health professionals, resources or services to treat his mental illnesses. Because Cheshire has no mental health units, officials have placed him in the segregation unit on behavior observation status. The conditions of confinement in the segregation unit are unsanitary and unsafe. Brown contends that Drs. Gagne and Crabb, Warden Santiago, Deputy Wardens Robert Martin and Jeffery Zegerzuski, Captain Shabbanis and Administrator Lanbontte were all aware that Cheshire could not provide him with the appropriate mental health treatment, but transferred him anyway.

Brown claims that Dr. Gagne was involved in the decision to transfer him to Cheshire and approved the decision in retaliation for his filing of past grievances and complaints about mental health treatment. Brown also suggests that the decision to transfer him to Cheshire was made in retaliation for a settlement agreement that he had reached with the Office of the Attorney General pertaining to several lawsuits he had filed against correctional officials.

Brown characterizes this action as one for emergency injunctive relief to redress deprivations of his rights. *See* Compl. at 3. In the relief section of the complaint, however, he seeks punitive and compensatory damages as well as declaratory and injunctive relief. *See id.* at 32-33.

**I.     Section 1981 Claims**

Brown claims that the defendants discriminated against him in violation of 42 U.S.C. § 1981. Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give

> evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  To state a claim under section 1981, Brown must allege that he is a member of a racial minority, the defendants intended to discriminate against him because of his race and that they subjected him to racial discrimination in connection with at least one of the activities enumerated in the statute, i.e., he was prevented from making and enforcing contracts, suing and being sued or giving evidence.  *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  Brown does not allege that the defendants discriminated against him on the basis of race.  Nor does he allege interference with any of the enumerated activities.  Thus, his section 1981 claim fails as a matter of law and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**II.     Claims under Protection and Advocacy for Mentally Ill Individuals Act of 1986**

Brown claims that the defendants violated the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAIMI"), codified at 42 U.S.C. §§ 10801 – 10805.   Section 1983 provides a remedy for "the deprivation of rights, privileges, or immunities secured by the Constitution and laws" of the United States.   42 U.S.C. § 1983.  The Supreme Court has held that no basis for a private lawsuit exists, "whether under 1983 or under an implied right of action," unless the "text and structure of a [federal] statute provide[s]  . . . [an] indication that Congress intend[ed] to create new individual rights."  *Gonzaga University v. Doe*, 536 U.S. 273, 286 (2002).

PAIMI requires each state, as a condition of receiving certain federal funding, to establish a government agency or private organization as the protection and advocacy service for the state

to protect and advocate for the rights of individuals with mental illness.  42 U.S.C. §§ 10802, 10803.  Under PAIMI, qualifying protection and advocacy agencies/organizations have statutory authority, to "pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with mental illness. . . ." *Id.* at § 10805(a)(1)(B).  Courts have uniformly held that the provisions of PAIMI do not provide a private right of action to an individual to enforce the requirements regarding the protection of individuals with mental illness.  *See Lawson v. Nat'l Church Residencies*, Case No. 5:15-cv-332-MW-GRJ, 2016 WL 2643155, at *2 (N.D. Fla. Apr. 6, 2016) ("PAIMII does not create an enforceable private right of action."), *report and recommendation accepted and adopted*, Case No. 5:15cv332-MW/GRJ, 2016 WL 3566856, at *1 (N.D. Fla. June 27, 2016);  *Darnell v. Jones*, No. CIV-12-1065-M, 2014 WL 4792144, at *3 n.4 (W.D. Okla. Sept. 24, 2014) ("PAIMI Act authorizes certain protection and advocacy systems to bring suit regarding access to patient records; its provisions do not provide a private cause of action to" plaintiff who is an inmate) (citations omitted), *aff'd*, 610 F. App'x 720 (10th Cir. 2015); *Romeo v. Aid to Developmentally Disabled, Inc.*, No. 11-CV-6340(JS)(GRB), 2013 WL 5532649, at *2 (E.D.N.Y. Oct. 3, 2013) (granting motion to dismiss on ground that the individual defendants were "not state actors" for purposes of 42 U.S.C. §§ 1983, 1985, 1986 and "that PAIMI create[d] no privately enforceable federal rights"); *Burke v. North Dakota Dep't Corr. & Rehab.*, No. 1:07-cv-4, 2007 WL 1456217, at *8 (D.N.D. May 16, 2007) (language of PAIMI "reveals no intent on the part of Congress to provide private remedy to review individual decisions of the protection and advocacy organizations regarding whether to provide services to particular individuals").

A review of the language and terms of PAIMII indicates that no individually enforceable private rights are conferred under it. Accordingly, Brown's claim under the PAIMII is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### III.   Section 1988 Claims

Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil right cases in conformity with federal law, or where appropriate, state law. This section, however, does not provide for an independent cause of action. *See Moor v. Alameda County*, 411 U.S. 693, 702-06, *reh'g denied*, 412 U.S. 963 (1973). If plaintiff is seeking attorneys' fees pursuant to section 1988(b), his claim also fails. A *pro se* litigant is not entitled to attorneys' fees under section 1988. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Any claims pursuant to 42 U.S.C. § 1988 are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### IV.   Section 1983 Claims for Monetary Damages - Official Capacity

Brown seeks monetary damages as well as injunctive and declaratory relief under Section 1983. He sues Commissioner Semple and Director Trestman in their individual and official capacities and all of the other defendants only in their individual capacities. To the extent that Brown seeks damages against Commissioner Semple and Director Trestman in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). All such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### V.   Section 1983 Claims against Grievance Administrator Daly

Brown states that prior to his transfer to Cheshire, he spoke to officials at Corrigan about his objections to the transfer and also filed written grievances with Grievance Administrator

7

Daly.  She returned the grievances because he had not attached evidence that he had submitted informal requests to prison officials regarding his objections to the transfer.  She directed Brown to submit informal requests and then to re-file his grievances.  Brown contends that he attempted to resolve his issues verbally but was unsuccessful.  Brown states that Administrator Daly violated his Fourteenth Amendment due process rights because she made it difficult or impossible for him to exhaust his administrative remedies because she either did not respond to his grievances or returned them as deficient in some way.

It is well-established that "[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." *Shell v. Brzesniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005).  In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y.2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003) ( "The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.")).

Brown concedes that although Administrator Daly returned the initial grievances that he submitted because he had not sufficiently engaged in attempts to informally resolve his issues, he subsequently submitted four new grievances.  From June 8, to June 10, 2016, he received receipts from "District 125" with regard to three of the four grievances.  Compl., Doc. No. 1  at 21-22.  Administrator Daly's failure to respond to or accept Brown's grievances did not prevent the plaintiff from asserting and pursuing his claims in this action.  Accordingly, the claims

8

against Administrator Daly with regard to her alleged non-compliance with the procedures set forth in the Department of Correction's administrative remedy directive for processing inmate grievances does not rise to the level of a constitutional violation.

Brown generally asserts that Administrator Daly conspired with other defendants to keep him from exhausting his remedies by refusing to accept or process his grievances. To state a claim for conspiracy under section 1983, Brown must allege facts showing an agreement between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and an overt act done in furtherance of the conspiracy that causes damages. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted)).

Brown has asserted no facts from which the court could infer the existence of a conspiracy by Administrator Daly and other defendants to violate Brown's constitutional rights with regard to the exhaustion of his administrative remedies. The claim that Administrator Daly conspired to violate his constitutional rights is conclusory, at best. Accordingly, Brown has not asserted a plausible conspiracy claim against Administrator Daly. The claims against

Administrator Daly for conspiracy and for a violation of his right to file grievances are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## VI. Property Claim

Brown alleges that Officer Aponte did not remove his personal property from his cell at Corrigan after officers transferred him to the medical infirmary. Brown claims that his cellmate stole much of his property before his property was removed from the cell and inventoried. Brown claims that he suffered serious losses of his personal property.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1983); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981). The State of Connecticut provides an adequate remedy for the kind of deprivation the plaintiff alleges. *See* State of Connecticut Department of Correction Administrative Directive 9.6(16) (2013), available at www.ct.gov/dos/LIB/doc/PDF/AD/ad01006.pdf, (providing Department of Correction's Lost Property Board shall hear and determine any claim by an inmate who seeks compensation not to exceed $3,500.00 for lost or damaged personal property and that the inmate may present the property claim to the Claims Commissioner after the Board denies the claim in whole or in part); Conn. Gen. Stat. § 4-141 et seq. (providing that claims for payment or refund of money by the state may be presented to the Connecticut Claims Commission); *S. v. Webb*, 602 F. Supp. 2d 374, 386 (D. Conn. 2009) (finding Connecticut has sufficient post-deprivation remedies for seizures of property by state officials). The state remedy is not rendered inadequate simply because Brown anticipates a more favorable remedy under the

federal system or it may take a longer time under the state system before his case is resolved. *See Hudson*, 468 U.S. at 535.

Brown does not allege that he has attempted to obtain just compensation from the State of Connecticut or that he declined to do so because the State of Connecticut's remedy for the deprivation of his property was inadequate or unavailable.[1]  Thus, Brown's federal claim that Officer Aponte neglected to remove his property from his cell in a timely manner which resulted in the theft of some of his property is not cognizable in this action.  The property claim against Officer Aponte is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## VII.  Section 1983 Claims against Remaining Defendants

Brown has stated plausible First Amendment retaliation claims against Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis, Officer Aponte and Administrator Lanbontte, plausible Eighth Amendment claims for deliberate indifference to safety, health and mental health needs against Commissioner Semple, Director Trestman, Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis, Officer Aponte and Administrator Lanbontte, a plausible Fourteenth Amendment Equal Protection claim against Commissioner Semple, Director Trestman, Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis and Administrator Lanbontte and a plausible claim of conspiracy to violate his constitutional rights against Dr. Gagne, Dr. Crabb, Warden Santiago,

---

[1]  Without support, Brown asserts that the lost property was worth over $5,000.00.  Even if the total amount of the property loss was in fact over $5,000.00 and his claim could not be considered by the Department of Correction property board, there are no facts to suggest that he was precluded from filing a claim with the Office of the Claims Commission.

Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis and Administrator Lanbontte.

**ORDERS**

The court enters the following orders:

(1)     The claims under 42 U.S.C. §§ 1981 and 1988 and PAIMII, all claims against Grievance Administrator Daly and the property claim against Officer Aponte are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).    The claims for monetary damages against Commissioner Semple and Director Trestman are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

The First Amendment retaliation claims will proceed against Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis, Officer Aponte and Administrator Lanbontte, the Eighth Amendment claims for deliberate indifference to safety, health and mental health needs will proceed against Commissioner Semple and Director Trestman in their individual and official capacities and against Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis, Officer Aponte and Administrator Lanbontte in their individual capacities, the Fourteenth Amendment Equal Protection claim will proceed against Commissioner Semple and Director Trestman in their individual and official capacities and against Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis and Administrator Lanbontte in their individual capacities and the claim of conspiracy to violate his constitutional rights will proceed against Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis and Administrator Lanbontte in their individual capacities.

(2)     **Because Brown paid the filing fee to commence this action, he is not entitled to have service effected by the court.**  In accordance with the requirements of Rule 4, Fed. R. Civ. P., Brown shall effect service of the complaint and a copy of this order on Commissioner Scott Semple and Director Trestman in their official capacities and shall effect service of the complaint and a copy of this order on each of the following defendants in his or her individual capacity: Commissioner Semple, Director Trestman, Dr. Gagne, Dr. Crabb, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzuski, Captain Shabbanis, Officer Aponte  and Administrator Lanbontte.  Returns of service and Waivers of Service of Summons forms that have been signed by the defendants should be filed with the court.  Failure to comply with this order will result in the dismissal of all claims against the defendants.

(3)     **The Clerk shall** send plaintiff instructions for service of the complaint, together with twelve copies of this order, ten blank Notice of Lawsuit forms and ten blank Waiver of Service of Summons forms to enable the plaintiff to serve a copy of the complaint and a copy of this order on each defendant in his or her individual capacity and two blank summons forms for plaintiff to complete and return to the Clerk for issuance to enable plaintiff to serve a copy of the summons and complaint and a copy of this order on Commissioner Semple and Director Trestman in their official capacities using the address of the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141.

(4)     Defendants shall file their responses to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit

or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

SO ORDERED at Bridgeport, Connecticut this 16th day of August 2016.

        /s/ Stefan R. Underhill_____
        Stefan R. Underhill
        United States District Judge