# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KENYA BROWN,
      Plaintiff,

      v.

SCOTT SEMPLE, et al.,
      Defendants.

No. 3:16-cv-01144 (SRU)

## RULING ON PENDING MOTIONS

Kenya Brown—currently incarcerated at the Cheshire Correctional Institution

("Cheshire") in Cheshire, Connecticut—originally filed a civil rights complaint against

Commissioner Scott Semple, Director of Mental Health Dr. Robert Trestman, Dr. Henry Crabbe,

Dr. Gerald Gagne, Jr., Warden Santiago, Deputy Warden Robert Martin, Deputy Warden Jeffrey

Zegarzewski, Captain James Shabanes, Correctional Officer Aponte, Health Services

Administrator Ron Labonte, and Administrative Remedy Coordinator Kimberly Daly. Brown has

now filed a motion for leave to file an amended complaint; two motions to supplement the cover

page of the amended complaint; two motions for order; a motion to file excess interrogatories;

and a motion for extension of time. For the reasons set forth below, I grant Brown's motion for

leave to amend and his first motion to supplement the cover page of the amended complaint, and

deny his remaining motions.

## I.      Motion to Supplement Cover Page – Amended Complaint [Docs. Nos. 34 & 35]

Brown has filed a motion for leave to file an amended complaint. Attached to the motion

to amend is a proposed amended complaint. After filing the motion for leave to file an amended

complaint, Brown realized that he had left defendant Officer Aponte off of the list of defendants

on the first page of the proposed amended complaint. He seeks leave to file a supplemental first page of the proposed amended complaint that includes Officer Aponte.

The motions to supplement cover page are essentially identical. Accordingly, I grant Brown's first motion to supplement the cover page, Doc. No. 34, and deny his second motion, Doc. No. 35, as moot.

## II.     Motion to Amend Complaint [Doc. No. 30]

Brown seeks leave to file an amended complaint to add new claims and defendants. Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as of [right] within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion" to dismiss, for more definite statement or to strike, "whichever is earlier." Because the defendants have not filed a responsive pleading or a Rule 12(b)(6), 12(e) or 12(f) motion in response to the complaint, Brown may amend once as a matter of right.

Accordingly, I grant Brown's motion for leave to file an amended complaint. The Clerk shall docket the proposed amended complaint attached to Brown's motion, Doc. No. 30. The Clerk shall also docket the supplemental first page of the amended complaint attached to Brown's motion to supplement cover page, Doc. No. 34, at 5, as a supplemental first page of the amended complaint.

I now consider the sufficiency of the allegations in the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) and Rule 8 of the Federal Rules of Civil Procedure.

### A.   Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), a court "shall dismiss a case at any time if it determines that" the complaint or amended complaint "is frivolous or malicious . . . fails to state

a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." *Id.* Dismissal of a complaint or amended complaint on those grounds is required "regardless of whether the prisoner has paid the filing fee" or is proceeding *in forma pauperis. See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that includes only "'labels and conclusions,' . . . 'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "Even after *Twombly*" and *Iqbal*, courts "remain obligated to construe a *pro se* complaint liberally," but the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

B.  Allegations

Brown's amended complaint includes essentially the same allegations as his original complaint but adds new allegations and new defendants. The defendants named in the amended complaint are as follows: Commissioner Scott Semple, Director of Mental Health Dr. Robert Trestman, Dr. Henry Crabbe, Warden Antonio Santiago, Deputy Warden Robert Martin, Deputy Warden Jeffrey Zegarzewski, Captain James Shabanes, Dr. Gerald Gagne, Jr., Dr. Paul Chaplin,

3

Dr. Berger, Lieutenant Halloran, Dr. Bruce Lichtenstein, Dental Director Dr. Benoint, Dr. Craig Burns, Nurse Sandy Pepin, Nurse George, Health Services Administrator Sharon Brown, Grievance Coordinator Michelle King, Dr. Elizabeth Coursen, Nurse Kim, and Correctional Officer Luis Aponte.[1]

Brown claims that, since 1993, various mental health professionals have prescribed medications to treat his various mental health conditions including, borderline personality disorder, anxiety, anti-social traits, suicidal ideation, self-mutilation, depression, and post-traumatic stress disorder. Commissioner Semple and other Department of Correction officials have created several "inmate profiles" that restrict interactions between Brown and other inmates because of past incidents. Brown alleges that the defendants have used those profiles to prevent him from being housed at Garner Correctional Institution ("Garner") or Osborn Correctional Institution ("Osborn") because the other inmates with whom Brown had prior conflicts are housed at those facilities and the facilities are not large enough to accommodate both Brown and the other inmates. Brown contends that Garner and Osborn are the only prison facilities in Connecticut that are equipped to treat his various mental health conditions.

Brown states, that as of May 2016, he had been confined at Corrigan Correctional Institution ("Corrigan") for three years. He asserts that at some point prior to May 19, 2016, a former warden and a deputy warden of Corrigan as well as a nurse and a psychologist who worked at Corrigan had approved of and implemented a particular form of behavioral treatment for him. According to Brown, that treatment was successful in addressing the behaviors that were caused by his various mental health conditions.

---

[1] The new defendants are Dr. Benoint, Dr. Berger, Health Services Administrator Brown, Dr. Burns, Dr. Chaplin, Dr. Coursen, Nurse George, Lieutenant Halloran, Nurse Kim, Grievance Coordinator King, Dr. Lichtenstein, and Nurse Pepin.

Prior to May 2016, the nurse and the psychologist left Corrigan and the warden and deputy warden were replaced by Warden Santiago and Deputy Wardens Robert Martin and Jeffery Zegerzewski. The new administration at Corrigan—which included Warden Santiago, Deputy Wardens Martin and Zegerzewski, Captain Shabenas, and Lieutenant Halloran—did not authorize the treatment methods used by the former nurse and psychologist, and the new members of the mental health staff at Corrigan abandoned those methods of treating Brown. Brown claims that Santiago, Martin, Zegerzewski, Shabenas and Halloran were deliberately indifferent to his mental health needs when they no longer permitted mental health professionals at Corrigan to treat him using the methods prescribed by the former nurse and psychologist.

Brown also alleges that Dr. Coursen was his psychologist at Corrigan for a period of two years prior to his transfer to Cheshire on May 31, 2016. During that two-year period, Brown's relationship with Dr. Coursen allegedly changed from a doctor-patient relationship to a more personal, physical, and sexual relationship. At times, Dr. Coursen would force Brown to take medication to reduce his anxiety during their elicit encounters.

Warden Santiago, Deputy Wardens Martin and Zegerzewski, Captain Shabenas, Dr. Crabbe, and Dr. Chaplin allegedly were aware of Dr. Coursen's inappropriate conduct toward Brown. Nurse Kim was the assistant to Dr. Crabbe and her office was close to Dr. Coursen's office. Nurse Kim allegedly observed Dr. Coursen's inappropriate behavior, but failed to take any action to stop it.

Brown also asserts that at some time during his confinement at Corrigan prior to May 2016, Michelle King was his counselor. She was allegedly in contact with Dr. Coursen and became aware of the inappropriate relationship between Dr. Coursen and Brown. As of May 2016, Michelle King was a Grievance Coordinator at Corrigan.

On May 19, 2016, Brown became involved in a heated debate with Officer Aponte. Brown became agitated and tried to harm himself. Officer Aponte called a code and escorted Brown to the medical infirmary. Dr. Coursen placed Brown in a cell on observation status.

At the time of his placement in the infirmary, Brown required partial dentures in order to chew his food. Brown claims that after his transfer to the infirmary at Corrigan, Officer Aponte and Lieutenant Halloran prepared and packed up the property in his cell in general population and placed it in temporary storage. They neglected to prepare an inventory of Brown's property items. In addition, they failed to give Brown's dentures to the medical department and instead discarded them. Brown has been unable to eat on one side of his mouth without the partial dentures.

At some point, after the plaintiff's placement in the medical infirmary, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzewski, Captain Shabenas, Health Services Administrator Labonte, Dr. Gagne, Dr. Crabbe, Dr. Chaplin, Dr. Berger, Dr. Burns, and Dr. Coursen concluded that the only possible course of action was to transfer Brown to Cheshire. Dr. Crabbe adjusted Brown's mental health score to facilitate his transfer to Cheshire. On May 31, 2016, Warden Santiago issued an order that Brown be transferred to Cheshire and correctional officers transported Brown to Cheshire that day.

Brown claims that during his confinement in the infirmary at Corrigan from May 19, 2016 to May 31, 2016, Dr. Coursen searched his personal property for letters from her to him and photographs of his family friends in an effort to cover-up her inappropriate relationship with him. Brown contends that Dr. Coursen destroyed some of his personal photographs before prison officials transferred him to Cheshire on May 31, 2016.

Brown claims that the appropriate mental health professionals, resources and services necessary to treat his mental illnesses are unavailable at Cheshire. Brown contends that Drs. Gagne, Crabbe, Chaplin, Berger, Burns, and Coursen, Warden Santiago, Deputy Wardens Robert Martin and Jeffery Zegerzewski, Captain Shabenas, Lieutenant Halloran, and Administrator Labonte were all aware that Cheshire could not provide him with the appropriate mental health treatment, but transferred him anyway.

Brown claims that during his confinement in the infirmary at Corrigan in May 2016, Dr. Gagne was a psychiatrist at Osborn and Northern Correctional Institution ("Northern"). Dr. Gagne allegedly refused to permit Brown to be transferred to Osborn and approved the decision to transfer Brown to Cheshire in retaliation for Brown's filing of past grievances and complaints about mental health treatment.

On June 1, 2016, at Cheshire, a psychologist allegedly informed Brown that Cheshire was not equipped to treat his mental health conditions. The psychologist contacted Drs. Berger and Chaplin regarding the unsuitability of Cheshire for Brown's mental health needs, but they took no action.

On June 3, 2016, Brown informed Nurse George that he could not keep bulk medications in his cell because of his attempts to harm himself. After Brown returned to his housing unit, Nurse George allegedly falsely accused him of being suicidal. Although Nurse Pepin was not present in the medical department when Brown spoke to Nurse George, Nurse Pepin confirmed the observations of Nurse George with regard to Brown's suicidal statements. Correctional officers handcuffed Brown and brought him to the segregation unit. Brown was forced to endure a humiliating strip search. Nurses George and Pepin caused Brown be placed on behavior

observation status. The behavior observation cell was filthy and the sink and toilet could not be used. Brown remained in the cell on behavior observation status until June 6, 2016.

Brown also asserts that Drs. Benoint and Lichtenstein failed to provide him with dental treatment during his confinement at Cheshire. In addition, they did not replace his partial dentures in a timely manner.

Beginning in July 2016, Brown met with Dr. Chaplin on a regular basis at Cheshire. During his sessions with Dr. Chaplin, Brown related all of the inappropriate behavior exhibited by Dr. Coursen during her treatment of him at Corrigan and that he had been forced to become involved in a sexual relationship with Dr. Coursen. Dr. Chaplin failed to report those allegations pursuant to the Prison Rape Elimination Act.

C. <u>Discussion</u>

As a preliminary matter, Brown's proposed amended complaint does not comply with Rule 8's pleading requirements. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise and direct." The purpose of Rule 8 is "to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciutti v. N.Y.C. Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). In addition, "the rule serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995). The plaintiff's statement of his claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant

material from a mass of verbiage.'" *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)

(quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969)).

When a litigant does not comply with Rule 8's requirements, the court may strike any

portion of the complaint that is redundant or immaterial pursuant to Rule 12(f). Alternatively, the

court may dismiss the complaint in its entirety in those cases "in which the complaint is so

confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised." *Salahuddin*, 861 F.2d at 42. For example, in *Salahuddin*, the Second Circuit had "no

doubt" that a complaint "span[ning] 15 single-spaced pages and contain[ing] explicit

descriptions of 20-odd defendants, their official positions, and their roles in the alleged denials of

[the plaintiff]'s rights" failed to comply with Rule 8's requirement of a "short and plain

statement." *Id.* at 43. Accordingly, the Second Circuit stated that "the district court was within

the bounds of discretion to strike or dismiss the complaint for noncompliance with Rule 8." *Id.*

In the present case, Brown's proposed amended complaint is neither "short and plain" nor

"simple." As indicated above, Brown originally named eleven defendants.[2] The amended

complaint adds twelve new defendants: Lieutenant Halloran, Dr. Chaplin, Dr. Berger, Dr.

Lichtenstein, Nurse Pepin, Nurse George, Nurse Kim, Dr. Benoint, Health Services

Administrator Brown, Dr. Coursen, Dr. Burns, and Grievance Coordinator Michelle King. The

amended complaint raises 30 claims for relief over the course of 300 paragraphs and 59 pages;

another 115 pages are attached as exhibits. The incidents to which the amended complaint refers

occurred at two different facilities over a period of several years. Like the complaint in

*Salahuddin*, Brown's pleading here clearly "contains a surfeit of detail." 861 F.2d at 43.

---

[2] I dismissed all claims against one defendant, Grievance Administrator Kimberly Daly. *See* Initial Review Order, Doc. No. 15, at 9–10.

1. *Dental, Deliberate Indifference to Safety/Failure to Protect, and Improper Placement in Segregation Claims*

Many of the claims in Brown's amended complaint are entirely unrelated to those in the original complaint. Those claims include (1) the allegations against Drs. Benoint and Lichtenstein regarding dental treatment; (2) the allegations against defendants Aponte and Halloran regarding the loss of Brown's partial dentures; (3) the allegations against Drs. Coursen, Chaplin, Berger, and Crabbe, Warden Santiago, Deputy Wardens Martin and Zegerzewski, Captain Shabenas, Grievance Coordinator King, and Nurse Kim regarding the inappropriate and potentially harmful relationship between Dr. Coursen and Brown during his confinement at Corrigan; and (4) the allegations against defendant King, as Brown's counselor, regarding his placement in segregation at Corrigan prior to May 2016.

Those claims are not related to each other and involve different defendants. Thus, the amended complaint fails to meet the requirements of Rule 20 governing party joinder. Rule 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and (b) "any questions of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). As the Second Circuit has observed in the Rule 13 context,[3] whether a counterclaim arises out of the

---

[3] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008); *see also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1653 (3d ed.).

same transaction as the original claims depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

Brown's various claims for deliberate indifference to mental health, safety, and dental needs, as well as his claims related to his improper placement in segregation and the loss of his partial dentures, occurred at two different facilities over a three-year period. Because those claims do not "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences," the amended complaint also fails to comply with Rule 20(1)(2). I dismiss Brown's dental claims, his deliberate indifference to mental health and safety claims, and his segregation placement claims against Drs. Benoint, Lichtenstein, Coursen, Chaplin, Berger, and Crabbe, Officer Aponte, Lieutenant Halloran, Warden Santiago, Deputy Wardens Martin and Zegerzewski, Captain Shabenas, Grievance Coordinator King, and Nurse Kim for failure to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure.

The court notes that in addition to failing to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure, Brown's claims regarding dental treatment and the loss of his dentures, as well as his claims regarding Dr. Coursen, are barred as duplicative of claims asserted in two other actions filed in this court. A district court enjoys substantial discretion to manage its docket efficiently to avoid duplicate litigation. *See Taylor v. Rodriguez*, 238 F.3d 188, 197 (2d Cir. 2001) ("In administering its docket, a district court may dismiss a second suit as duplicative of an earlier suit . . . ."). A plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000). The Second Circuit has concluded that "[t]he complex problems that can

arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Id.* Generally, "the first suit [to be filed] should have priority absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (alterations in original).

If it is possible for a plaintiff to amend the complaint in each action to "comprehend all the issues and all the parties now involved in either," the continuation of the first action to be filed is favored. *See Hammett v. Warner Brothers Pictures*, 176 F.2d 145, 150 (2d Cir. 1949); *Gyadu v. Hartford Ins. Co.*, 133 F.3d 907 (2d Cir. 1998) (affirming dismissal under "prior pending action doctrine" when plaintiff "still had the opportunity to raise the[] [additional] causes of action in his amended complaint in his first action"). To determine whether a claim is barred by the prior pending action doctrine, the court may rely on a comparison of the pleadings filed in the two actions.

Brown has asserted the same dental treatment and lost denture claims in the complaint filed in *Brown v. Benoit*, No. 3:17-cv-00053 (SRU), and has asserted the same claims of deliberate indifference to safety and mental health needs/failure to protect regarding Dr. Coursen's alleged relationship with him in the complaint filed in *Brown v. Semple*, No. 3:17-cv-01328 (SRU). Drs. Benoint and Lichtenstein are named as defendants in *Brown v. Benoit*, No. 17-cv-00053 (SRU), and the issues of the loss of Brown's partial dentures and denial of dental treatment are being litigated in that case. Although Officer Aponte and Lieutenant Halloran are not named as defendants, I cannot discern why Brown could not amend his complaint in *Brown v. Benoit* to add Officer Aponte and Lieutenant Halloran as defendants and to add his claim against them regarding the loss of Brown's partial dentures.

Likewise, all of the defendants named in connection with Dr. Coursen's alleged inappropriate relationship and treatment of Brown in this action are also named in *Brown v. Semple*, No. 17-cv-01328 (SRU), except for Nurse Kim and Deputy Warden Martin. I cannot discern why Brown could not amend his complaint in the latter case to add Nurse Kim and Deputy Warden Martin as defendants.

Although the present case was filed before both *Brown v. Benoit*, No. 3:17-cv-00053 (SRU), and *Brown v. Semple*, No. 17-cv-01328 (SRU), the prior pending action doctrine permits the dismissal of claims in the first-filed case where the "balance of convenience" weighs "in favor of the second-filed action." *See Adam*, 950 F.2d at 93–94. I already have issued an Initial Review Order permitting Brown's dental claims to proceed in *Brown v. Benoit*, *see* Doc. No. 7, No. 17-cv-00053 (SRU), and the defendants have appeared in that case. I also already have issued an Initial Review Order in *Brown v. Semple*, No. 3:17-cv-01328 (SRU), permitting several of Brown's claims to proceed regarding his alleged improper relationship with Dr. Coursen. *See* Doc. No. 11, *id.* Therefore, I conclude that it would be appropriate to have all of Brown's claims regarding relationship with Dr. Coursen resolved in the second-filed action. *See Holliday v. City of Newington*, 2004 WL 717160, at *2 (D. Conn. Mar. 19, 2004) (dismissing first-filed action under prior pending action doctrine and resolving all claims in second-filed action "because the second-filed case involves the same claims as the claims in the first-filed case as well as the same defendants, the defendants have appeared in the second-filed case and the court has already issued a scheduling order in the second-filed case").

Thus, I also dismiss Brown's claims regarding dental care and loss of dentures against Officer Aponte and Lieutenant Halloran, and his claim regarding Dr. Coursen's treatment against Drs. Coursen, Chaplin, Berger, Crabbe, Warden Santiago, Deputy Wardens Martin and

Zegerzewski, Captain Shabenas, Grievance Coordinator King, and Nurse Kim, pursuant to the prior pending action doctrine. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

2. *Claims Related to Mental Health Treatment at Corrigan in May 2016*

Brown's allegations in paragraphs 1 to 9 and 39 to 167 of the amended complaint essentially mirror the allegations asserted in the original complaint regarding Brown's treatment at Corrigan from May 19, 2016 to May 31, 2016 (the date of his transfer to Cheshire). With regard to those allegations, Brown seeks to add Lieutenant Halloran and Drs. Berger, Burns and Chaplin as defendants because he claims that they were either involved in creating or applying the policies that caused him to be transferred to Cheshire from Corrigan, or else were directly involved in the decision to transfer him.

Brown seeks to add allegations that challenge the Department of Correction's policies or directives governing the transfer of an inmate to other facilities when the inmate has a profile due to conflicts with other inmates or staff members. *See* Am. Compl., Doc. No. 30, at 8–11, ¶¶ 10–33. He identifies the policies as those contained in the Department of Correction's Administrative Directives 9.9(6)(B) and 8.5(9). *See id.* at 8, ¶¶ 10–11. Brown claims that those policies were the basis for the defendants' decision to transfer him to Cheshire instead of to a more appropriate facility that could provide him with mental health treatment, such as Osborn or Garner. He challenges the policies as violating the Eighth Amendment both facially and as applied to him. He claims that Drs. Berger, Trestmoon, Burns and Chaplin and Commissioner Semple were responsible for using those policies to deprive him of appropriate mental health treatment in May 2016.

I conclude that the new allegations are sufficiently related to the claims underlying Brown's original complaint. Thus, the Eighth Amendment claims asserted in paragraphs ten to

thirty-three of the amended complaint will proceed against Commissioner Semple, Warden Santiago, Deputy Wardens Martin and Zegarzewski, Captain Shabanes, Lieutenant Halloran, and Drs. Berger, Burns, Chaplin, and Trestman.

### 3. *Retaliation Claims*

Brown generally asserts that Commissioner Semple and Drs. Berger, Burns, Chaplin and Trestman retaliated against him by implementing and applying the policies that have resulted in the denial of proper mental health treatment for his various conditions. *See id.* at 12, ¶¶ 34–38. He claims that the policies have been used against him to restrict mental health treatment, and that the defendants implemented and applied the policies in retaliation for his filing a prior lawsuit regarding dangerous or unwanted side effects of a medication prescribed to him. *See id.*

Brown also generally alleges that the conduct of Officer Aponte and Lieutenant Halloran in discarding his partial dentures at the time of his transfer to the infirmary at Corrigan on May 19, 2016 was retaliatory. *See id.* at 34, ¶ 194. In addition, he generally asserts that Grievance Coordinator King's conduct in failing to process his grievances properly constituted retaliatory conduct. *See id.* at 26, ¶ 130.

Brown claims that, during the period that he was in the infirmary at Corrigan in May 2016, Health Services Administrator Labonte spoke to Dr. Gagne and asked him to accept Brown at Osborn. *See id.* at 23, ¶¶ 111–113. Dr. Gagne refused to permit Brown to be transferred to Osborn and also was involved in approving the decision to transfer Brown to Cheshire. *See id.* Brown claims that Dr. Gagne refused to accept him at Osborn and supported the decision of prison officials at Corrigan to transfer him to Cheshire in retaliation for his filing of past grievances and complaints about mental health treatment. *See id.*

"In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000). That principle also "applies in the prison context." *Id.* Because claims of retaliation are easily fabricated, courts "approach prisoner retaliation claims with skepticism" and require that they be supported by specific facts. *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). Conclusory allegations of retaliation are not sufficient; such claims must "be supported by specific and detailed factual allegations." *Id.* (internal quotation marks omitted). To state a retaliation claim, a plaintiff must show that (1) his conduct or speech was protected by the Constitution or federal law; (2) prison officials took adverse action against him; and (3) the protected conduct or speech was a substantial or motivating factor in the alleged retaliatory or adverse action by prison officials. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).

Brown's claims that Drs. Berger, Trestman, Burns, and Chaplin, Commissioner Semple, Aponte, Halloran, and King engaged in retaliatory conduct are conclusory. Such claims of retaliation are not cognizable under section 1983, and I dismiss them for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

The facts as alleged against Dr. Gagne are sufficient to state a plausible claim of retaliation. Thus, the retaliation claim against Dr. Gagne will proceed.

4. *New Grievance Procedure Claims*

Brown claims that Michelle King was a designated Administrative Remedy/Grievance Coordinator at Corrigan in May 2016. In his original complaint, Brown named Administrative Remedy Coordinator Daly as a defendant. I dismissed all claims against Coordinator Daly. *See* Initial Review Order, Doc. No. 15, at 7–10.

Brown now asserts essentially the same claims against Administrative Remedy/Grievance Coordinator King as he did against Administrative Remedy Coordinator Daly. He claims that Coordinator King violated his Fourteenth Amendment rights by making it difficult or impossible for him to exhaust his administrative remedies. Specifically, Brown alleges that Coordinator King failed to replenish the supply of administrative remedy forms in the officers' station or replaced the forms with out of date forms; rejected Brown's grievances because she claimed that he had not attempted to informally resolve his issues; and did not respond to his grievances or returned them as deficient in some way. *See* Am. Compl., Doc. No. 30, at 25, ¶ 122.

It is well-established that "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." *Shell v. Brzesniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005). In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y.2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341–42 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.")). I conclude that the claims against Coordinator King with regard to her alleged non-compliance with the procedures set forth in the Department of Correction's administrative remedy directive do not rise to the level of a violation under the Fourteenth Amendment.

Furthermore, if a prison official either deprives an inmate of access to the grievance system or refuses to process a grievance, the inmate is not precluded from directly petitioning the

government for redress of that claim through a lawsuit in court. In fact, Brown availed himself of his right of access to the courts by filing five lawsuits in this court from May 20, 2016 to August 7, 2017, including this case.[4] Accordingly, I dismiss Brown's claim that Administrative Remedies/Grievance Coordinator King limited his First Amendment right to access the courts by failing to properly process his grievances for lack of an arguable legal or factual basis. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

5. *Conspiracy Claim Against Coordinator King and Administrator Brown*

Brown generally asserts that Administrative Remedies/Grievance Coordinator King conspired with other defendants, including Warden Santiago, to keep him from exhausting his remedies by refusing to accept or process his grievances regarding his placement in the infirmary at Corrigan and the decision to transfer him to Cheshire. *See* Am. Compl., at 25, ¶¶ 121–22. Brown contends that Health Services Administrator Brown conspired with Health Services Administrator Labonte. *See id.* at 57. He contends that Administrator Brown accepted telephone calls from Labonte and other defendants about his transfer to Cheshire. *See id.*

To state a claim for conspiracy under section 1983, Brown must allege facts showing (1) "an agreement between two or more state actors" (2) "to act in concert to inflict an unconstitutional injury" on Brown; and (3) "an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations. "[C]omplaints containing only conclusory, vague, or general allegations that the

---

[4] *See Brown v. Simpson*, No. 3:16-cv-00781(SRU) (filed May 20, 2016); *Brown v. Semple*, No. 3:16-cv-01144 (SRU) (filed July 8, 2016); *Brown v. Benoit*, No 3:17-cv-00053 (SRU) (filed Jan. 12, 2017); *Cruz, et al. v. Semple*, No 3:17-cv-00348 (JBA) (filed Feb. 28, 2017); *Brown v. Semple*, No 3:17-cv-01328 (SRU) (filed Aug. 7, 2017).

defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Brown has asserted no facts from which I could infer the existence of a conspiracy by Coordinator King and the other defendants to violate Brown's constitutional rights with regard to the exhaustion of his administrative remedies. Nor has he alleged facts suggesting a conspiracy by Administrator Brown to violate Brown's constitutional rights by accepting telephone calls regarding his transfer from Corrigan to Chesire. The claims that Administrator Brown and Coordinator King conspired to violate Brown's constitutional rights are conclusory, at best.

Therefore, Brown has not asserted a plausible conspiracy claim against either Administrator Brown or Coordinator King. I dismiss Brown's conspiracy claims against Coordinator King and Administrator Brown. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

6. *Mental Health Treatment and Conditions at Cheshire*

Brown asserts that, on June 3, 2016, he informed Nurse George that he could not keep bulk medications in his cell due to his "self injurious nature." Am. Compl., Doc. No. 30, at 31, ¶ 169. After Brown returned to his housing unit, Nurse George accused him of being suicidal and issued an order that he be placed on behavior observation status. *See id.* at ¶ 170. Although Nurse Pepin was not present in the medical department when Brown spoke to Nurse George, Nurse Pepin confirmed the observations of Nurse George with regard to Brown's suicidal statement. *See id.* at ¶ 171.

Correctional officers handcuffed Brown and brought him to the segregation unit to be placed on behavior observation status. *See id.* at 31–32, ¶¶ 173–74. The officers performed a strip search on Brown before placing him in a safety gown in the cell. *See id.* at 32, ¶ 178.

A mental health worker came to speak to Brown an hour later. *See* Exs. DD & FF to Am. Compl., Doc. No. 31, at 46–47, 50–51. The mental health worker made the decision to maintain Brown on behavior observation status. *See* Ex. FF, Doc. No. 31, at 50–51. Brown claims that the behavior observation cell was filthy and the sink and toilet could not be used. *See* Am. Compl., Doc. No. 30, at 33, ¶ 186. Pursuant to the orders of the mental health worker, Brown remained in the cell on behavior observation status until June 6, 2016. *See* Ex. EE to Am. Compl., Doc. No. 31, at 48–49.

Brown claims that Nurses Pepin and George were deliberately indifferent to his mental health needs and safety. The exhibits to the amended complaint reflect, however, that Nurses Pepin and George reasonably perceived statements made by Brown to be statements suggesting the possibility of self-harm. *See* Ex EE, FF, & GG to Am. Compl., Doc. No. 31 at 48–51. They directed custody officials to place Brown in a cell on observation status to protect his safety. The mental health worker who interviewed Brown an hour after he was placed on observation status determined that Brown should remain on behavior status. *See* Ex. FF to Am. Compl., Doc. No. 31, at 50–51.

Brown's allegations against Nurses Pepin and George do not constitute claims of deliberate indifference to mental health needs. To protect Brown from himself, they placed him on behavior observation status. A mental health worker subsequently affirmed the decision to place Brown on behavior observation status. Accordingly, I dismiss Brown's claims against Nurses Pepin and George. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

Brown's only allegation against Health Services Administrator Brown regarding his confinement at Cheshire is that the administrator responded to Brown's grievance regarding his placement on behavior observation status. On June 23, 2016, Administrator Brown indicated that she would follow up with all medical and mental health employees who were involved in the placement of Brown on behavior observation status. *See* Am. Compl., Doc. No. 30, at 33, ¶ 179; Ex. DD to Am. Compl., Doc. No. 31, at 46–47. I note that Brown has also attached to the amended complaint Administrator Brown's response to an inmate request submitted by Brown in July 2016. The request and Administrator Brown's response address Brown's questions about how he might challenge mental health policies. Brown's allegations against Administrator Brown regarding her responses to one grievance and one inmate remedy request fail to state a claim of a violation of Brown's constitutional or federally protected rights. Thus, I dismiss that claim. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

Although Brown complains that the cell in which he was placed on June 3, 2016 was unsanitary and the sink and toilet could not be used, he does not assert that he made any of the defendants aware of those conditions. When a mental health worker evaluated him on June 6, 2016, he stated that he had been on a hunger strike for two and one-half days. *See* Ex. EE to Am. Compl., Doc. No. 31, at 48–49. Brown was released from the behavior observation status cell later that day. *See id.* Brown has not alleged that any defendant was aware of the conditions of confinement in his observation status cell from June 3, 2016 to June 6, 2016. As such, Brown has not stated that the defendants subjected him to unconstitutional conditions of confinement. I dismiss without prejudice Brown's Eighth Amendment claim regarding the conditions in the behavior observation cell. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

Finally, Brown also asserts that he underwent a strip search in front of at least fifteen unidentified officers prior to being placed in the behavior observation cell. He does not assert, however, that any of the defendants were present for or involved in the strip search. Thus, he has not alleged that any of the defendants violated his Eighth Amendment rights in connection with the strip search. I dismiss without prejudice Brown's strip search claim. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

7.  *Fifth and Sixth Amendment Claims*

On the first page of the amended complaint, Brown states that he is asserting violations of the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The Fifth Amendment applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (stating that Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (holding that any due process claim against a city was "properly brought under . . . the Fourteenth Amendment, not . . . the Fifth Amendment"). Because Brown has not alleged any deprivation of his rights by the federal government, I dismiss any Fifth Amendment claims against the defendants. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

The Sixth Amendment provides:

> [i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defen[s]e.

U.S. Const. amend. VI. Brown does not allege facts to state a claim that any of the defendants violated his rights under any provision of the Sixth Amendment. Thus, I dismiss Brown's Sixth Amendment claims as lacking an arguable factual or legal basis pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii).

8. *Section 1985 and Section 1986 Claims*

In addition to filing this action pursuant to 42 U.S.C. § 1983, Brown pursues claims under 42 U.S.C. §§ 1985 and 1986. The first two subsections of 42 U.S.C. § 1985 clearly are not relevant to this action. Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties, and section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings. Brown is not a federal official and his claims are not related to participation of witnesses in judicial proceedings.

In order to state a claim under section 1985(3), the plaintiff must allege: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to "depriv[e] . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) an overt "act [taken] in furtherance of . . . [the] conspiracy"; and (4) an injury to the plaintiff's " person or property," or a deprivation of his "right or privilege." *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). Furthermore, the plaintiff must show that the conspiracy was motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* at 102. Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights. *See id.*

Brown has alleged that the defendants acted together to violate his rights. He has not alleged, however, that the actions of any defendant were taken because of Brown's race or on the

basis of other class-based discriminatory animus. Thus, Brown fails to state a claim cognizable under section 1985(3), and I dismiss his section 1985 claim. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

Section 1986 provides no substantive rights. Rather, it provides a remedy for the violation of section 1985. As a result, a prerequisite for an actionable claim under section 1986 is a viable claim under section 1985. *See Dwares v. City of New York*, 985 F.2d 94, 101 (2d Cir. 1993) ("Liability under § 1986 . . . is dependent on the validity of a claim under § 1985."). Because Brown has not stated a section 1985 claim, his section 1986 is not actionable and is dismissed. *See* 28 U.S.C. § 1915(e)(2)(b)(ii).

D. Conclusion

With respect to the claims asserted in the amended complaint, I order as follows:

1. The following claims under section 1983 are dismissed for failure to comply with Rules 8 or 20 of the Federal Rules of Civil Procedure: the dental treatment and lost dentures claims, the deliberate indifference to mental health and safety claims, and the segregation placement claims, all raised against Drs. Benoint, Lichtenstein, Coursen, Chaplin, Berger and Crabbe, Officer Aponte, Lieutenant Halloran, Warden Santiago, Deputy Wardens Martin and Zegerzewski, Captain Shabenas, Grievance Coordinator King and Nurse Kim. Those claims also are dismissed as barred by the prior pending action doctrine.

2. The following claims under section 1983 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii): the claims that Commissioner Semple, Aponte, Halloran, King, and Drs. Berger, Trestman, Burns and Chaplin, engaged in retaliatory conduct; the First and Fourteenth Amendment claims against Grievance Coordinator King for her failure to properly process Brown's grievances; the conspiracy claim

against Grievance Coordinator King; the Eighth Amendment claims against Nurses Pepin and George and Health Services Administrator Brown; the conditions of confinement in the observation status cell claim; the strip search claim; and the Fifth and Sixth Amendment claims.

3. The section 1985 and section 1986 claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii).

4. The following section 1983 claims will proceed: the First Amendment retaliation claim against Dr. Gagne; the Eighth Amendment claims for deliberate indifference to safety and mental health needs against Commissioner Semple, Dr. Trestman, Dr. Gagne, Dr. Crabbe, Dr. Berger, Dr. Burns, Dr. Chaplin, Dr. Coursen, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzewski, Captain Shabenas, Lieutenant Halloran, Officer Aponte and Administrator Labonte; the Fourteenth Amendment Equal Protection claim against Commissioner Semple, Dr. Trestman, Dr. Crabbe, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzewski, Captain Shabenas, Administrator Labonte, Dr. Chaplin, Dr. Coursen, Dr. Berger, and Lieutenant Halloran; and the claim of conspiracy to violate Brown's constitutional rights against Dr. Gagne, Dr. Crabbe, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzewski, Captain Shabenas, Administrator Labonte, Dr. Chaplin, Dr. Coursen, Dr. Berger, and Lieutenant Halloran.

**III.      Motion for Order [Doc. No. 78]**
**          Motion for Order on Amended Complaint [Doc. No. 82]**

In his first motion for order, Brown seeks to know the status of his request to amend. In view of my ruling on Brown's motion for leave to file an amended complaint, I deny as moot Brown's first motion for order, Doc. No. 78.

In his motion for an order on amended complaint, Brown states that he does not seek to proceed in this action with regard to his claims against Dr. Coursen, but instead seeks to file a separate action regarding his allegations against Dr. Coursen. As indicated above, I dismissed the claims regarding Brown's relationship with Dr. Coursen as duplicative of the claims raised in a new action filed by Brown on August 7, 2017, *Brown v. Semple*, No. 3:17-cv-01328 (SRU). Accordingly, I deny as moot Brown's motion for an order on amended complaint, Doc. No. 82.

**IV.      Motion to File Extra Interrogatories [Doc. No. 85]**
**          Motion for Extension of Time [Doc. No. 95]**

Brown seeks to serve additional interrogatories on all defendants. He claims that extra interrogatories are needed to advance the litigation of this case, that all questions are "prudenant to the claims or claims sought," and that his intent in serving extra interrogatories is not to be burdensome. *See* Doc. No. 85, at 1. Brown does not indicate whether or how many interrogatories he has already served on the defendants.

Brown also seeks an extension of time to complete discovery. Brown mentions in his motion that the parties are still in the process of settlement discussions.

Because the parties are still exploring the possibility of settlement, I deny without prejudice Brown's motions to serve additional interrogatories and motion for extension of time to conduct discovery. *See* Docs. Nos. 85 & 95. I will enter a new scheduling order, if necessary, at a later time.

**V.     Motion for Protective Order [Doc. No. 91]**

Brown seeks an order directing Dr. Coursen not to contact him with regard to the relationship that he had with her during his confinement at Corrigan prior to May 2016. Because I have dismissed the claims against Dr. Coursen with regard to her treatment of Brown prior to May 2016, and because Brown has filed a separate action against her regarding those claims, *Brown v. Semple*, No. 3:17-cv-01328 (SRU), the motion for protective order is more appropriately addressed in the new action. Therefore, I deny without prejudice Brown's motion for protective order, Doc. No. 91. I will direct the Clerk to docket a copy of the motion for protective order in the new case against Dr. Coursen.

To the extent that Brown claims that he has not received sufficient therapy at Cheshire regarding his treatment by and relationship with Dr. Coursen, the defendants shall address that allegation in their response to Brown's motion for order filed on July 31, 2017, in which Brown states that he has not been receiving a sufficient number of therapy visits since Dr. Sanesario left Cheshire. *See* Mot. Order, Doc. No. 93.

**VI.     Conclusion**

**It is hereby ordered that:**

(1)     Brown's Motion for Leave to Amend Complaint [**Doc. No. 30**] and the first Motion to Supplement Cover Page of the Amended Complaint [**Doc. No. 34**] are **GRANTED**. **The Clerk shall** docket the proposed amended complaint attached to the motion, pages 2–59 of Doc. No. 30, as the amended complaint. **The Clerk shall** docket pages 60–80 of Doc. No. 30 as exhibits A to J of the amended complaint, and docket Doc. No. 31 as exhibits K to UU to the amended complaint. **The Clerk shall** also docket the supplemental first page of the amended

complaint attached to the motion to supplement cover page, Doc. No. 34, at 5, as a supplemental first page of the amended complaint.

The following section 1983 claims asserted in the amended complaint are **DISMISSED** for failure to comply with Rules 8 or 20 of the Federal Rules of Civil Procedure: the dental treatment and lost dentures claims, the deliberate indifference to mental health and safety claims and the segregation placement claims against Drs. Benoint, Lichtenstein, Coursen, Chaplin, Berger, and Crabbe, Officer Aponte, Lieutenant Halloran, Warden Santiago, Deputy Wardens Martin and Zegerzewski, Captain Shabenas, Grievance Coordinator King and Nurse Kim. The dental treatment and lost dentures claims and the deliberate indifference to mental health and safety claims are also **DISMISSED** as barred by the prior pending action doctrine.

The following section 1983 claims asserted in the amended complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii): the claims that Commissioner Semple, Aponte, Halloran, and King, and Drs. Berger, Trestman, Burns, and Chaplin, engaged in retaliatory conduct; the First and Fourteenth Amendment claims against Grievance Coordinator King for her failure to properly process Brown's grievances; the conspiracy claim against Grievance Coordinator King; the Eighth Amendment claims against Nurses Pepin and George and Health Services Administrator Brown; the conditions of confinement in the observation status cell claim; the strip search claim; and the Fifth and Sixth Amendment claims.

The section 1985 and 1986 claims asserted in the amended complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii).

Thus, all claims against defendants Nurse Pepin, Nurse George, Health Services Administrator Brown, Grievance Coordinator King and Nurse Kim have been **DISMISSED.**

The following section 1983 claims asserted in the amended complaint will proceed: the First Amendment retaliation claim against Dr. Gagne; the Eighth Amendment claims for deliberate indifference to safety and mental health needs against Commissioner Semple, Dr. Trestman, Dr. Gagne, Dr. Crabbe, Dr. Berger, Dr. Burns, Dr. Chaplin, Dr. Coursen, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzewski, Captain Shabenas, Lieutenant Halloran, Officer Aponte, and Administrator Labonte; the Fourteenth Amendment Equal Protection claim against Commissioner Semple, Dr. Trestman, Dr. Crabbe, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzewski, Captain Shabenas, Administrator Labonte, Dr. Chaplin, Dr. Coursen, Dr. Berger, and Lieutenant Halloran; and the claim of conspiracy to violate Brown's constitutional rights against Dr. Gagne, Dr. Crabbe, Warden Santiago, Deputy Warden Martin, Deputy Warden Zegerzewski, Captain Shabenas, Administrator Labonte, Dr. Chaplin, Dr. Coursen, Dr. Berger, and Lieutenant Halloran.

The second Motion to Supplement Cover Page of the Amended Complaint [**Doc. No. 35**], the Motion for Order [**Doc. No. 78**] and the Motion for Order on Amended Complaint [**Doc. No. 82**] are **DENIED** as moot.

The Motion to File Extra Interrogatories [**Doc. No. 85**], the Motion for Extension of Time [**Doc. No. 95**] and the Motion for Protective Order [**Doc. No. 91**] are **DENIED** without prejudice. **The Clerk shall** docket a copy of the Motion for Protective Order [**Doc. No. 91**] in *Brown v. Semple*, No. 3:17-cv-01328 (SRU).

(2) **Because Brown paid the filing fee to commence this action, he is not entitled to have service of the amended complaint effected by the court.** In accordance with the requirements of Rule 4, **Brown shall** effect service of the amended complaint and a copy of this order on Dr. Craig Burns and Dr. Berger in their official and individual capacities, **and shall**

effect service of the amended complaint and a copy of this order on each of the following defendants in his or her individual capacity: Dr. Paul Chaplin, Lieutenant Halloran, and Dr. Elizabeth Coursen. Returns of service and Waivers of Service of Summons forms that have been signed by the defendants should be filed with the court. **Failure to comply with this order will result in the dismissal of all claims against the defendants**.

**The Clerk shall** send Brown instructions for service of the amended complaint, together with five copies of this order, five blank Notice of Lawsuit forms and four blank Waiver of Service of Summons forms, to enable Brown to serve a copy of the complaint and a copy of this order on each defendant in his or her individual capacity. **The Clerk also shall** mail Brown two blank summons forms for him to complete and return to the Clerk for issuance to enable Brown to serve a copy of the summons and amended complaint and a copy of this order on Drs. Craig Burns and Berger in their official capacities using the address of the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141.

(3) **Defendants Burns, Berger, Chaplin, Halloran and Coursen shall** file their response to the amended complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. **Defendants Semple, Trestman, Gagne, Crabbe, Santiago, Martin, Zegerzewski, Shabenas, Aponte, and Labonte shall** file an answer to the amended complaint **within thirty (30) days** of the date of his order.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) **Within twenty (20) days** of the date of this order, **the defendants shall** file a response to Brown's claim that he has not received sufficient therapy regarding his treatment by

and relationship with Dr. Coursen, as included in the Motion for Protective Order, Doc. No. 91, and shall also respond to the allegations, which are included in the Motion for Order, Doc. No. 93, pertaining to Brown's claim that he has not been receiving a sufficient number of therapy visits since Dr. Sanesario left Cheshire. *See* Mot. Order, Doc. No. 93.

So ordered.

Dated at Bridgeport, Connecticut, this 25th day of September 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge